## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SUSAN MCKAY, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>BORDER FOODS, INC., and BORDER FOODS OF WISCONSIN, LLC,<br><br>                    Defendants. | Case No.<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff SUSAN MCKAY ("Plaintiff"), on behalf of herself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1.      Plaintiff, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants BORDER FOODS, INC., and BORDER FOODS OF WISCONSIN, LLC (collectively, "Defendants") collectively own, lease, and/or operate at least one hundred eighty-nine (189) Taco Bell restaurants in the states of Iowa, Illinois, Michigan, Minnesota, South Dakota, Wisconsin, and Wyoming. Plaintiff's claims arise from own her experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants'

facilities"), and from site investigations at seventeen (17) of Defendants' facilities also finding excessive sloping conditions.

2.      Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations.  *See* 28 C.F.R. §§ 36.101 *et seq*.

3.      The ADA expressly authorizes the injunctive relief aimed at modification of ***existing*** policies, practices, or procedures that Plaintiff seeks in this action.  In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

4.      Based on the extensive factual investigation performed by Plaintiff's investigators, Plaintiff believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that the Defendants' existing internal maintenance procedure (discussed at ¶¶ 18-21 below) is inadequate and must be modified.   42 U.S.C. § 12188(a)(2).

5.      Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify its existing policies to ensure that its facilities comply with the ADA implementing regulations' excessive sloping requirements.  28 C.F.R. §§ 36.101 *et seq*.

6.      Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a.   Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b.   Defendants modify its existing maintenance policy to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c.   Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7.      Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . ..  Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8.      Plaintiff Susan McKay is, and at all times relevant hereto was, a resident of Jackson, Michigan. Plaintiff is a person with a mobility disability stemming from a T11/T12 injury resulting from a car accident in 1979. As a result of her disability, Plaintiff uses a wheelchair for mobility. Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

3

9. Defendant BORDER FOODS, INC., is, and at all relevant times was a Minnesota Corporation, doing business in the State of Michigan as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the state.

10. Defendant BORDER FOODS OF WISCONSIN, LLC, is, and at all relevant times was a Wisconsin Corporation, doing business in the State of Michigan as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the state.

11. Plaintiff is further informed and believes, and based thereon alleges that Defendants collectively own, lease, and/or operate one hundred eighty-nine (189) Taco Bell restaurants in the states of Iowa, Illinois, Michigan, Minnesota, South Dakota, Wisconsin, and Wyoming, as described herein.

12. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

### Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities

13. Plaintiff visited Defendants' facilities located at 821 Capital Avenue, Battle Creek, Michigan, on September 13, 2021, where she experienced unnecessary difficulty and risk of physical harm exiting and entering her vehicle, and navigating the facilities, such that extra care was needed to avoid falling and to safely traverse the area, due to excessive slopes in a purportedly accessible Parking Area and other ADA accessibility violations as set forth in more detail below.

14. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. She regularly travels to the area to shop and for leisure. On September 13, 2021, Ms. McKay was traveling to Saugatuck for a vacation with her husband and stopped in Battle Creek for food. She travels through Battle Creek to Saugatuck multiple times per year, and plans those trips around

stopping in Battle Creek to eat. Plaintiff often stops for Taco Bell on road trips due to her preference for their crunchwrap supreme and an iced tea. Plaintiff is familiar with Battle Creek because she also travels there several times a year to shop at the store "Ollie's Bargain Outlet." Plaintiff will be visiting Battle Creek within the next few months to shop and will be passing through the area to the beach again next Spring, and during those visits, intends to dine at Defendants' Battle Creek facility. Furthermore, Plaintiff intends to return to Defendants' facility in Battle Creek facility to ascertain whether it remains in violation of the ADA.

15.    As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination she has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities Full and Equal Access to Defendants' Facilities**

16.    As the owner and/or operator of its facilities, Plaintiff is informed and believes, and based thereon alleges that, as a Taco Bell franchisee pursuant to franchise agreements, Defendants utilize an Operations Manual or "Answer System" (the "Manual") which sets forth the standards issued by the franchisor, and is required to follow all of the manual's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting further management, administration, and maintenance policies, practices, and procedures related to "Daily Outside Maintenance." Plaintiff is further informed and believes, that pursuant to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drivethrus, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual.

17.     Plaintiff is further informed and believes, that pursuant to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drivethrus, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual.

18.     Plaintiff is informed and believes that, pursuant to the franchise agreement, Defendants are required to enter into lease agreements containing specific terms, setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property.

19.     Plaintiff is further informed and believes, and based thereon alleges that, pursuant to the franchise agreement, Defendants are required to designate an "Principal Operator" that supervises the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning its daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within its Parking Areas, through one or more Directors of Operations, who supervises restaurant leaders, including Region Coaches, who provide support for three to seven Area Coaches; the Area Coaches, in turn, provide leadership and direct supervision to five to eight restaurants, General Managers, and Assistant General Managers who are in restaurant supervisors.  Plaintiff is further informed and believes, and based thereon asserts that Defendants employ a Director of Facilities who oversees one or more Regional Facility Managers who oversee the day-to-day maintenance and act as a liason between operations and service providers for Defendants' restaurants, and who are responsible for developing, scheduling, and updating preventative maintenance programs for Defendants'

restaurants. Plaintiff is informed and believes that collectively, these positions constitute the "Principal Operator" charged with overseeing operations of Defendants' restaurants for compliance with Taco Bell's policies through regular and complete inspections of Defendants' restaurants.

20.     Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

21.     On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

    a.   4269 17 Mile Road South East, Cedar Springs, Michigan:

        i.   The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

    b.   695 68th Street South West, Byron Center, Michigan:

        i.   The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had  slopes exceeding 2.1%[1].

    c.   1825 West Washington Street, Greenville, Michigan:

        i.   The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and flares exceeding 10%[2];

---

[1] Pursuant to the 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4.  The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

[2] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%.  The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

      ii.    The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had  slopes exceeding 2.1%.

d.  1819 28th Street South West, Wyoming, Michigan:

      i.    The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

e.  4234 Lake Michigan Drive, Grand Rapids, Michigan:

      i.    The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and flares exceeding 10%;

f.  1191 O'Malley Drive, Coopersville, Michigan:

      i.    The purportedly accessible curb ramp located on the route to the building entrance had a curb ramp flare slope exceeding 10.0%;

g.  1144 Washington Avenue, Holland, Michigan:

      i.    The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

h.  1133 Phoenix Road, South Haven, Michigan:

      i.    The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and curb ramp flare slopes exceeding 10.0%.

      ii.    The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

i.  835 South Kalamazoo Street, Paw Paw, Michigan:

      i.    The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

j.  5301 Portage Road, Portage, Michigan:

      i.    The purportedly accessible curb ramp projected into an access aisle[3] in violation of 36 C.F.R. part 1191, §406.5;

  k.  25 South Waverly Road, Holland, Michigan:

      i.    The purportedly accessible curb ramp projected into an access aisle in violation of 36 C.F.R. part 1191, §406.5;

      ii.    The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had  slopes exceeding 2.1%.

  l.  10729 University Avenue North East, Blaine, Minnesota:

      i.    The purportedly accessible curb ramp projected into an access aisle in violation of 36 C.F.R. part 1191, §406.5;

  m.  291 Highway 10 North East, Blaine, Minnesota:

      i.    The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had  slopes exceeding 2.1%.

      ii.    The purportedly accessible curb ramp located on the route to the building entrance had a curb ramp flare slope exceeding 10.0%;

  n.  14231 Nicollet Avenue, Burnsville, Minnesota:

      i.    The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had  slopes exceeding 2.1%.

  o.  8623 East Point Douglas Road, South, Cottage Grove, Minnesota:

      i.    The purportedly accessible curb ramp located on the route to the building entrance had a curb ramp flare slope exceeding 10.0%;

      ii.    The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

---

[3] Pursuant to the 2010 Standards, curb ramps cannot project into parking spaces or access aisles. *See,* 36 C.F.R. part 1191, § 406.5.  The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.6, §4.7.8.

    p.   821 Capital Avenue South West, Battle Creek, Michigan:

        i.   The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

    q.   6314 South Westnedge Avenue, Portage, Michigan:

        i.   The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

22.    As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

23.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

24.    Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

25.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

26.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any BORDER FOODS, INC., and BORDER FOODS OF WISCONSIN, LLC located in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendants' failure to

comply with the ADA's slope regulations within the purportedly accessible Parking Areas of its facilities.

27.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

28.     Typicality:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

29.     Common Questions of Fact and Law:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

30.     Adequacy of Representation:  Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and she has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

31.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

//

## SUBSTANTIVE VIOLATION

## VIOLATION OF THE ADA, TITLE III

## [42 U.S.C. §§ 12101, *et seq.*]

### (Against all Defendants)

32.     Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

33.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, she is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

34.     Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

35.     Plaintiff is informed and believes, and based thereon asserts that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

36.     The ADA, the franchise agreements, and lease agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

37.     The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that Defendants' facilities were not maintained or operated so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

38.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

39.    Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed, constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

40.    Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

41.    Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

42.    Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, prays for:

a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii)  directs Defendants to modify its existing procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of its facilities post-remediation; and (iii) directs that Plaintiff

shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.    The provision of whatever other relief the Court deems just, equitable, and appropriate.


Dated:  November 12, 2021                    Respectfully Submitted,

                                             */s/ Jordan T. Porter*
                                             Jordan T. Porter
                                             *(Pro Hac Vice Forthcoming)*
                                             **NYE, STIRLING, HALE**
                                             **& MILLER, LLP**
                                             33 West Mission Street, Suite 201
                                             Santa Barbara, CA 93101
                                             Phone: 805-963-2345
                                             jordan@nshmlaw.com

                                             Benjamin J. Sweet
                                             **NYE, STIRLING, HALE**
                                             **& MILLER, LLP**
                                             1145 Bower Hill Road, Suite 104
                                             Pittsburgh, PA 15243
                                             Phone: 412-857-5352
                                             ben@nshmlaw.com

                                             *Attorneys for Plaintiff and the Class*